David Ashley Smith appearing for appellant, James Silverthorne appearing for appellee. Good morning, counsel. Mr. Smith, would you like to reserve any time for reply? Yes. Five minutes, Your Honor. Certainly. We'll reserve five minutes, and you may proceed. Your Honor, the interlocutory judgment is, in fact, a final judgment. It's a final judgment. It's a final judgment. As all issues were tried, the trustee cannot point to any issue that was not tried or any issue that is pending, or to any reason that the bankruptcy judge would change his findings of no net equity. The bankruptcy court calling the judge interlocutory rather than final in order to be able to deal with possible future issues is just the same as reserving jurisdiction. Reserving jurisdiction does not prevent a judgment for being final. That's fine, but isn't the compelling test, you know, established by Slemak in the Ninth Circuit, that there's nothing to be done and the court's intent that the matter be final? It called it interlocutory, but it did actually intend that what it said to happen to Furman would be final, because if we wait, we send it back, or if he just waits, then all we have is a judgment. Furman, you stay at Curbing Creek as long as you pay the rent, and the judge doesn't have to do anything. No more will happen. When the time finally passes and there's equity, he says the trustee can sell. He even says under Hyman, he can just go out and sell if he thinks there's going to be enough money. Once he sells, he can ask Furman, well, I don't have, give me half, or Furman has to leave. This is final. This is a final judgment of his rights. If you consider that he told the trustee, record this with the Fairfax County Recorder. So the Fairfax County Recorder, they aren't the last word entitled. Mr. Smith, is it Smith or Smyth? I'm sorry. Smith, sir. Mr. Smith, if we were to treat this as a final judgment, then to the extent that there is a determination that, A, there was no breach, number two, that the trustee doesn't have authority to sell under 363H, and the turnover isn't required, are those legal issues or factual questions? They're legal issues. Turnover would have nothing to do with it because turnover is 542 and you cannot get an avoided transfer by turnover. So that would be legal and that cause of action is gone. How about 363H? 363H is gone for a few reasons. One reason is that the judge, and we like this, of course, not that 360H doesn't apply, and his ruling is sort of unique because most avoided transfers, they automatically say it doesn't apply. But he says it doesn't apply because he didn't have the right title, not having ownership. So we agree. But that's a legal question or a factual issue? That's a legal question. But there's another thing about 363H. Because he made that good ruling, he decided to say nothing about 363H3, whether the detriment to Furman is less than the benefit to the estate. And the evidence came in. Benefit to the estate, no equity, no money. Furman, yeah, he got a job now. He doesn't have to move out of the neighborhood, but he still has to move out of a house he's been in 21 years. So you've got benefit, zero, no benefit. There's no money in it. That's what the judge found. Did you brief the question about whether or not the detriment under 363H3 was a valid reason for the court to deny the relief? Or did you not address it at all in your brief? I addressed it. I would say I addressed it in my 28J letter. Because I found that all of the 363H cases, most of them, when they do deal with whether 363H applies, they just assume it does. And it does. But the judge's ruling is sort of unique. And I agree. If you take the literal reading of the law, 363H requires three different common law tenancy and the petition date. When you transfer the property away, you don't have any interest. You don't have a tenancy on the petition date. And since it was a no-fault thing, it's just kind of purely, well, you transferred it away, Armita, and you didn't own it. She's trying to get an exemption. You just mechanically don't own it. You don't get the exemption. So the other side of the coin is we don't get to say it was property of the estate on the petition date with any title for 363H. The 363H would not also apply if, like what the judge wants to say, is that the PSSA controls. Because the PSSA validly weighs the common law titles and statutory relief. It's in there, and it's approved by a case in Virginia, Kramer v. Kramer. And so completely apart from that, I believe, and none of that matters. There's two hard pieces of evidence you can't get around. No equity. No matter what you say, there's just no equity, and no equity for getting everything else is going to remain no equity, and you're not going to get any money. And the other thing is what the judge said. Literally, he said at the end of the first case, as the case is presented, there is no evidence to support turnover count. And in fact, the turnover count was not even pursued at trial. If that's true, then the recovery count wasn't, because 550A is exactly the same as turnover. Unfortunately for everyone here, they didn't know that to the end. But you have to use 550A. You can't use 542. But if you say there's no evidence and no evidence presented for benefit, if nothing was presented for 542, then nothing was presented for 550A. So, Mr. Smith, if it's a final decision and Mr. Castaneda was successful on the determination that it wasn't a breach of contract, he was successful on the determination that trustee could not utilize 363H to sell the property, and he was successful on the claim for turnover, why does he have standing to appeal a decision, if it is final, that it was in his favor and he won on all the questions presented? It is in his favor. But what isn't in his favor is that the judge made a ruling that I can't do anything. It's interlocutory, David, and you just sit here. You do nothing. You do nothing, and you just wait. We'll have a status conference. I can't appeal interlocutory. It's very hard to appeal. And so then what do we do? We go back, and the question is, well, no equity. What are we going to do about that? Well, how about this, Mr. Cunningham? Why don't you get an appraiser now? Well, the reason is he has no reason he couldn't have done it at trial. He can't go back without showing he couldn't have done a trial. Well, here's another thing, Mr. Cunningham. We've been waiting for years now. It's 2027. And guess what? There's equity in the property on that. We got a buyer. Well, that's evidence that come out in after trial.  Because the buyer is using the 2027 value. So what it is is two bright line things. One, he missed the statute of limits, no question about it. And second, let's say he didn't miss it. We show off a trial. He doesn't present any evidence. He loses. The judge says, oh, he didn't present evidence. So we still don't know what's happening. And we're just going to keep going. Was he required to present evidence of value? So for three, he has to present evidence for his cause of action, which is to sell Curving Creek. That's what his cause of action was, to sell Curving Creek. And he has the burden on all 363-H. He has to show that. We lost. I mean, why are we arguing that? We're arguing because if we do nothing, Berman is going to lose this house in one of two ways. One is, a little while from now, the judge is going to say, I changed my mind. 363-H does count. It's only interlocutor. I changed my mind. There was equity. Or the other way he's going to say is, well, 363-H doesn't even matter. We've got this property settlement agreement, which we say counts. And he said it counts because the integration clause wasn't obeyed. Only one person signed the next document. Well, if you look up, that's not true. He thought Armida was the only one who signed a document that got rid of the PSSA. No. He said that's why it applied. You look at it, both Berman and Armida signed it. It superseded. It merged with. It got rid of the PSSA. So what's going to happen is Berman didn't win. What got rid of the PSSA? PSSA is a property settlement. Right, but you said it got rid of the property settlement. What got rid of the property settlement? What got rid of the property settlement agreement was a February 6, 2019 deed from Armida to Berman. Which was then voided. Yes, it was voided. But the important thing is. There is no deed to then merge. It merged with the fraudulent transfer. The fraudulent transfer was then avoided. It was preserved, but it wasn't recovered. So whatever was transferred. You're into your five minutes, Mr. Smith. You're about four and a half now, so I just want to bring it up. Okay. Okay, all right. We'll let you reserve then on that point in time. Mr. Silverthorne. Good morning, Your Honors. May I begin? You may, certainly. May it please the Court. I want to start by addressing some of the arguments brought up by opposing counsel. And more particularly the questions asked in the order regarding oral argument. First off, under SLMIC, there's two requirements for a judgment to be found final. A complete act of adjudication and clear evidence of the judge that the judge's intention that it be the court's final act. If you had an early judgment after trial, what else is there to do? So in this particular case, the trustee was actually found to have prevailed on the breach of contract issue and was awarded. All right. I'll put it on the first one. But did you prevail? Because I thought there was no damages for breach of contract. And damages, according to your trial brief, requires under Virginia law evidence of damage. And there was no damage. So how did you prevail? We prevailed in that the mortgage payments were not made and equity was building in the debtor's estate. That's not a claim. With each payment, equity was increasing. What claim did you prevail on in your cause of action, in your lawsuit, that would entitle you to be the prevailing party under the marital settlement? Under the marital settlement, the appellant was required to make those mortgage payments. They failed to make payments. I understand that. You can say that they were required. We're going to assume for purposes of this discussion they were required. They later did. Right? And then the court was very clear. They did the fault. They cured it. There's no breach of contract. I mean, there's no recovery. There was a breach of contract that was cured. And, therefore, there was no award in favor of the trustee's breach of contract claim. Right. There's no award in terms of the contract being cured. But the PSSA also contains an attorney's award fee or an attorney's award provision that provides attorney's awards to the prevailing party, if they are forced to bring the lawsuit later on, which the trustee was forced to do. But, counsel, the award of attorney's fee doesn't make the judgment not final, does it? Correct. So I'll move on to the 363. I have a question, though, too. Okay, so there was a breach of contract. But you got no recovery because there were no damages. If you can't recover anything, how are you with the prevailing party? Because it was established that there was a breach. It was since cured, and so that kind of eliminated that. Yeah, I don't mean to be a simpleton here, but, you know, normally the prevailing party is one that gets something, right? Your client didn't get anything. Right, and damages, I'm sure, would have been awarded had the breach not been cured. But I think I'll sort of – But, counsel, there's more a fundamental question here, which is what about the agreement, if it required him to make the payments, awards you anything if he doesn't do it? Because the only rights you have are to indemnity if she is held responsible for a failure of him to pay taxes or the deed of trust or some other expense related to the property, and a judgment is entered against her. It doesn't give the trustee any rights or any damages, any money awardable under that agreement, right? Well, under the agreement, the debtor and now the trustee, after recovering the debtor's rights under that agreement, to Kerbin Creek, there's a sale provision in that paragraph 9 of the PSSA, which entitles the debtor to 50% of the equity, and that equity continues to grow as mortgage payments are made. But that doesn't give you any damages for a breach, which is what the fundamental question here that you raised. You said he breached the agreement, he didn't make the mortgage payments, we get damages, he cured, God knows why, but it doesn't have any effect on your right to recover any money for a breach, does it? It only entitles you, ultimately, if you can get them to agree to a sale or you get the court to compel a sale, it gets you some ultimate value out of the property. But there's no claim that you have, is there, for breach of contract? Because the contract doesn't provide any remedy for you, does it? What am I missing? The sale is independent of his obligation to pay the mortgage, that's how they'll divide the proceeds. But it doesn't say if he breaches the agreement, I have the right to sell the property. That's by mutual consent. So the agreement states that neither party shall unreasonably withhold their consent to sale the property. Right now, it's not unreasonable to withhold consent if you're current on your mortgage payments. But if you stop making those payments, you put the trustees and the estate's interest in that property at risk, and that's the basis for bringing this sort of challenge to protect those interests. So let's start at the beginning just for one second. This action began as an opportunity for the trustee to avoid a transfer of an interest by the debtor pre-petition to Mr. Castaneda that you believed was without consideration or was with the intent to delay or defraud creditors under 548. Correct? Correct. And then the result of that was to enable you then to have the ownership interest in the property, the estate. The trustee recovered the debtor's ownership interest under the property settlement. It didn't need the property settlement agreement, did it? Because by operation of law under 541, once the recovery occurs, it becomes property of the estate. Under 550 or 551, under 541A3 or A4, doesn't it become property of the estate as of the commencement of the case? So the trustee, by operation of law, by avoiding the transfer, becomes the owner of the property under the court's decision, avoiding the transfer. What additional rights are provided under the PSA that give the trustee any better authority, any greater rights than the bankruptcy code does if you avoid the transfer under 548 and recover it for the benefit of the estate under 550? And what the court decided was that we recovered the rights and remedies of the debtor under the PSSA. So let's talk about PSSA for a second. The PSSA contains spousal maintenance obligations. Are you collecting the spousal maintenance obligations or not the spousal maintenance? Child support. Did you collect child support obligations in 2018 through the time that the agreement was allegedly breached? No, you didn't, right? Did you maintain that he had medical insurance, life insurance that's also provided for in the agreement? Those are all rights devolved to the trustee. Did you ensure that those rights were performed by Mr. Castaneda? No. No. Of course you didn't. The only thing you're holding onto is the fact that they dealt with property interests, which was the house. That's what you care about. That's what you avoided the transfer for. The agreement provides you with nothing, does it? It provides the estate with 50% equity in the house. But if she has 50% title of the property because you avoided the transfer, then the estate owns 50% without the agreement, doesn't it? The agreement states that the parties will mutually agree to sell the entire property. But they're not going to mutually agree because she doesn't care and he doesn't want to have it sold. So what you want to use is the power of sale under 363H, which gives the trustee authority to sell the property. That's what you really want to do, isn't it? That or the sale provision in the PSSA. But then, according to the judge, you've got to wait until there's a breach until you can do it. And if he keeps it current, if the estate remains open for inevitably forever, until he dies? Not necessarily until there's a breach, but once there's sufficient equity toward his concerns about having to relocate, he will obtain his share from the sale and that will alleviate. But how does that establish consent under 363B? You don't have consent with him. You'll never have consent with him. He doesn't ever want to see the estates recover any interest in the property. So you can't use 363B. Under the PSSA, neither party can unreasonably withhold their consent. The debtor is entitled to 50% of the equity in that home. And to never sell that property despite having enough equity to alleviate your concerns is unreasonable. What's enough equity? I believe in the appellant's declaration, he stated $30,000 would be... No, no, no. You said there needs to be enough equity to force the sale because failure to agree would be unreasonably withholding it. What's enough equity? Especially given this is the second adversary, I guess, first appeal, there was maybe $30,000 equity if the value was $400,000. I don't know how you're going to account for the mortgage payments. That doesn't seem to be addressed by the property, I mean, the marital settlement. Is there an agreement on how to account for the mortgage payments? Mr. Southern, is the answer to that a related question if I can piggyback on to Judge Spraker? Is that how long do we keep this case open? I mean, when does this asset become burdensome? The bankruptcy court seemed to indicate that it wouldn't be available for sale until he breached or there was some other basis for you to use 363. The agreement itself doesn't provide any timeline for sale, doesn't provide any circumstances for sale other than mutual consent. We're just not clear on how long are you going to remain entitled and force him to continue to make payments. And you have no rights unless you exercise something under 363H. It would essentially stay open until the trustee is able to bring the sale, force the sale, obtain a court-ordered sale under either the property settlement agreement or 363 for a breach. And so the duties of the trustee require that the estate be closed expeditiously, but that is qualified by, as is compatible with the best interests of the parties in interest. Is the estate solvent? The estate solvent? Yeah. I'm not sure right now. So keeping this open maybe just so that trustee's fee can be paid? No, that is not the concern of the trustee. I believe there are still active creditors and in the trustee's declaration in the second, or not declaration, but testimony in the second adversary proceeding. And what we have consistently said is that any sort of fees paid out will have a carve out for these creditors. Counsel, what Mr. Smith has argued is that this is a final determination and that's something that we have to consider. But if he's correct, wasn't the trustee, if the trustee believed that 363H was applicable, wasn't it obligated to appeal that decision once the judge entered the order saying I'm going to find they didn't own it as of the commencement of the case and therefore as a matter of law they can't sell it? Yes, but the 363H was sort of a belt and suspenders argument for ordering a sale of the property. The trustee was relying more on their sale rights under the PSSA. So if we were to affirm the decision of the court and say it's a final order and it would have race judicata effect on the trustee's ability to ever sell the property under 363H, wouldn't it? Yeah, I do believe that would be the effect. But I still do not believe that the judge intended the order to be final, which is the second element required under SLMIC. They focused sort of on the language in the judgment and we contrasted there in that they merely stayed the adversary and further ordered that a status conference would be scheduled in the future. Thank you, I see your time's up. Judge Gannon, any additional questions? No. Judge Corbett? No. Thank you very much. We'll return to Mr. Smyth. I believe you have, looks like, a little bit over four minutes of reply. 541A3 says that an avoided transfer is not property of the state until it's recovered. Then you have 541A4 which says it's not property of the state until it's preserved. Since all transfers are preserved... Mr. Smyth, let's get into the heart of your argument. Why did the trustee bring the avoidance action in the first place? The trustee brought the avoidance action and it's complicated because my argument really didn't come in. Basically, they said to me, I said, I don't have anything to do with your firm. I'm going to put you and Curban Creek behind me. I'm deeming the property to you. You keep it. That's it. So, it was a, but you don't mess with me with the children. You don't go after. Well, that's not legal consideration. Our defense was, and the judge never even mentioned it, it was tenants by the entirety of the property. There was one joint tenant. The transfer did not harm the joint tenant and fed because the property, Curban Creek, and Furman were still liable to the only person who had to be paid. But the judge didn't go for it. So, I didn't even talk about it. But I just want to give one sentence. Really, the most important thing is the statute of limitations. They missed it. The judge said, I always believe avoided transfer equals return of the property to the estate right away. Or as of the petition date, it doesn't. I want to mention how 540, I'll just tell you the case that explains it. I'd like to say something too. We'll let one speaker at a time. Yeah, okay. The case that says it, and it's a lower case, says, how can you have 541A3 that asks for recovery when you don't need it if preservation does it? Well, the case is Parker v. Titan Mining. It's a lower court, 2022 Bankruptcy Lexus 1000 at page 29. The case that the Ninth Circuit follows, and the Ninth Circuit doesn't have one. All the other ones follow this one, but the Ninth Circuit itself doesn't have one. But the other case of the Ninth Circuit is Colonial Realty 980F2-125. It's not property to the estate, despite 541A4, unless it's a lien. Then the lien is gone, title is cleared up, and the possessory interest. I just want to leave. Well, not leave, but. So, wait. Mr. Smith, just so I can understand your argument. Your argument is the trustee made a motion or filed an adversary proceeding to recover the transfer pre-petitioned by the debtor to Mr. Castaneda for the benefit of the estate and wanted to recover that for the benefit of the estate. Got a judgment that said that. But because the judge didn't include the specific language that it's recovered for the benefit of the estate in the original pleading under 551, as well as 550, that that somehow makes the judgment deficient. And his attempt later to change that, to alter it, to express his intent is still violative of the law. There are absolutely two statute of limits for an avoided transfer, and you have to clear them both. AVI is the main case, and it's a BAP case. And if you do them in the same case like everyone does, you don't even notice them. But if you end the case, AVI and Madoff, if you end the first case and only get avoidance, and the judge said we only got avoidance. He said benefit of the estate is the future. Benefit of the estate is what 550A says. He said it wasn't done. One thing was done. AVI and Madoff, and they all say it, no question. There's two statute of limits. None of us knew about it. He missed it. The judge let him dismiss the case without turnover because he had no appraiser. And he was in a safe position. Little do we know, a year later, ruling in the future was 550F, and he missed it. Madoff, AVI are exactly like our case. He missed the statute of limitations. The case that I cited called Parker shows how you can't say, well, you know, the 540A3 doesn't matter. A4 means everything is preserved, and so we don't need to recover. And, no, they absolutely say it's not property of the estate until it's avoided, and the 541A4, and I think it's explained best in the Parker case. So, one, we did beat them on the statute of limitations. Two, we showed up at trial. We won. They lost. They showed no evidence. And the judge, oh, we don't know enough. Well, you don't know enough because the other side didn't present evidence. So what do we do? Give them a chance. If this is sent back, we're going to be as sheets and ladders between the appeal court. We're going to do a motion for abandonment. No equity. Well, the judge will say, ah, there is equity. We'll do a motion. Mr. Smythe, I think we're over the limit now, and I think that's probably enough. Okay, thank you. Thank you very much. All right. Thank you both for your argument. The matter will be deemed submitted, and we'll try to get it out of decision as soon as possible. But thank you very much. I'll conclude the hearing in Castaneda v. Hopper. Madam Clerk, can you go ahead and call the third matter, please?
judges: Spraker, Gan, and Corbit